```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LOCAL UNION NO. 1 of the UNITED                 :
ASSOCIATION OF JOURNEYMEN AND                   :
APPRENTICES OF THE PLUMBING AND                 :
PIPE FITTING INDUSTRY OF THE                    :
UNITED STATES AND CANADA,                       :
                                                :
                Petitioner,                     :     MEMORANDUM AND ORDER
                                                :     12-CV-2034 (DLI)(RLM)
        -against-                               :
                                                :
JPP PLUMBING, LLC,                              :
                                                :
                Respondent.                     :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Petitioner" or "Local Union No. 1") initiated this action to confirm two arbitration awards issued against JPP Plumbing, LLC ("Respondent" or "JPP Plumbing"). Petitioner moved for summary judgment and Respondent cross-moved to vacate the awards. For the reasons set forth below, the Court grants Petitioner's motion for summary judgment and denies Respondent's cross-motion to vacate the awards.

## BACKGROUND

**I. Factual Background**

Local Union No. 1 is a signatory to a series of collective bargaining agreements (individually, "CBA" and collectively, "CBAs") that included coverage from July 1, 2010 through June 30, 2012. (Pet. Rule 56.1 Statement ¶ 3, Doc. No. 18-11; Resp. Response to Pet. Rule 56.1 Statement ("Resp. Response to Rule 56.1") ¶ 3, Doc. No. 19.) On February 10, 2009, JPP Plumbing executed an agreement to be bound by the provisions of the CBAs. (Pet. Rule

1

56.1 Statement ¶ 4; Resp. Response to Rule 56.1 ¶ 4.) JPP Plumbing is an employer that acted as a subcontractor on a project located at the Newtown Creek Water Pollution Control Plaint, in Brooklyn, New York. (Resp. Rule 56.1 Statement ¶ 2, Doc. No. 20-2.)

*A.     First Arbitration*

In April 2011, Local Union No. 1 filed a grievance against "JPP Picone." (*Id.* at ¶ 29.) After a hearing held on May 11, 2011, the Petitioner withdrew its claim against "JPP Picone," who was not a signatory to the CBAs, and re-filed the action against JPP Plumbing. (*Id.* at ¶ 31.) The grievance alleged that trench drain covers were installed by dock builders, rather than Local Union No. 1 plumbers, in contravention of Local Union No. 1's CBA. (Decl. of Jane Lauer Barker Ex. E at 1 of Mins. of Exec. Comm. Hrg., Doc. No. 18-6.) On July 20, 2011, a hearing was held on the re-filed action against JPP Plumbing. (*Id.* at 1.)

On July 21, 2011, the Executive Committee issued a decision (the "Trench Drain Cover Award") on the re-filed action. (*Id.*) The Executive Committee found in favor of Local Union No. 1 because JPP Plumbing failed to submit evidence to support its claim that there was a jurisdictional issue related to the dock builders' union. (*Id.* ("In the absence of any evidence that the work in dispute should not have been performed by plumbers pursuant to the CBA signed by the Employer, the Executive Committee finds in favor of the Union . . . .").) The Executive Committee had requested the dock builders' CBA at the hearing held on May 11, 2011 but it was never provided. (*Id.*) The Trench Drain Cover Award provided "that the Employer shall pay 140 hours of wages and fringes to be apportioned among the Local 1 member [sic], working at the job at the time." (*Id.*)

The July 21, 2011 Trench Drain Cover Award was faxed and mailed on the date of issuance and Respondent admits receipt, at the latest, on July 25, 2011. (Pet. Rule 56.1 Statement ¶ 21; Resp. Response to Rule 56.1 ¶ 21.)

B.  *Second Arbitration*

On September 20, 2011, Local Union No. 1 requested arbitration of claims that JPP Plumbing had violated various provisions of the CBA. (Barker Decl. ¶ 8.) On October 25, 2011 and December 21, 2011, the Executive Committee held hearings on these grievances. (*Id.* at ¶ 8; Resp. Response to Rule 56.1 ¶ 8.) The grievance related to the 41G Contract alleged a violation of Paragraph 44 of the CBA, which requires a plumber to maintain construction water under certain circumstances. (Barker Decl. Ex. C at 3.)

On January 5, 2012, the Executive Committee issued a decision (the "Construction Water Award"). The decision addressed various questions pertaining to different provisions of three different contracts. The Executive Committee could not agree on whether there were violations of two of the contracts, the 47G Contract and the 35G Contract, and referred those matters to the Full Arbitration Committee pursuant to the CBA. (*Id.* at 2-3.) The Executive Committee rendered a decision on the alleged construction water violation. The committee found that JPP Plumbing "violated Paragraph 44 of the CBA by not paying for maintenance of construction water for 1,023 hours." (*Id.* at 6.) Further, in addition to the wage and fringe benefits awarded in the amount of $90,484.35, the Executive Committee imposed of penalty of $10,000. (*Id.*) The penalty was based on JPP Plumbing's "pretty serious breach" of a "simple, clear and longstanding provision of the CBA." (*Id.*)

Respondent admits receipt of the January 5, 2012 Construction Water Award on January 6, 2012. (Resp. Response to Rule 56.1 ¶ 15.)

3

## II. Procedural History

On April 25, 2012, Local Union No.1 initiated the instant action to confirm the Construction Water and Trench Drain Cover Awards. (Pet., Doc. No. 1.) On July 24, 2012, JPP Plumbing filed its Answer and Cross-Claim. (Ans., Doc. No. 10.)

Petitioner moved for summary judgment to confirm the two arbitration awards. (Notice of Motion for Summ. J., Doc. No. 18.) JPP Plumbing opposed the motion for summary judgment and cross-moved to vacate the two arbitration awards. (Motion for Summ. J., Doc. No. 20.)

## LEGAL STANDARDS

## I. Judicial Review of Arbitration Awards

A district court's role when reviewing an arbitration award is limited. *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011) ("The role of a district court in reviewing an arbitral award is 'narrowly limited' . . . ." (quoting *Tempo Shain v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). In particular, "[i]t is well settled that judicial review of an arbitrator's interpretation of a collective bargaining agreement is extremely limited." *N.Y.'s Health and Human Serv. Emps. Union v. Grossman*, 2005 WL 5834572, at \*6 (E.D.N.Y. May 13, 2005); *see also United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements."). Arbitrators' decisions are given great deference by the courts to promote the quick and efficient resolution of matters. *Agility Pub. Warehousing*, 840 F. Supp. 2d at 710.

Generally, an award based on an arbitrator's interpretation of a collective bargaining agreement should be confirmed, even if the court disagrees with the factual findings or legal

conclusions. *See Grossman*, 2005 WL 5834572, at *6; *see also United Steel Workers of Am.*, 363 U.S. at 596 ("The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). Courts "will enforce the award unless the party seeking vacatur shows that the arbitrators failed to present a 'barely colorable justification for the outcome reached.'" *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Landy Michaels Realty Corp. v. Local 32B—32J Serv. Emps. Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)). Thus, the burden of proof to avoid confirmation of an award is "very high," *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006), and rests with the party seeking to vacate the award. *Grossman*, 2005 WL 5834572, at *6.

## II.     Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995)

(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## DISCUSSION

**I.  Request to Vacate Awards**

  *A.  Timeliness of Request to Vacate*

According to the Second Circuit, "grounds for vacating an arbitration award may not be raised as an affirmative defense after the period provided in the appropriate statute of limitations has lapsed." *Grossman*, 2005 WL 5834572, at *7 (citing *Local 802 Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998)).  The Federal Arbitration Act provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.  Additionally, New York Civil Practice Law and Rules provides that "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him." N.Y. C.P.L.R. 7511(a).

Respondent's answer and cross-petition to vacate the awards was filed on June 15, 2012. Respondent admits receipt of the Trench Drain Cover Award on July 25, 2011.  Respondent in no way addresses the timeliness of its request to vacate the Trench Drain Cover Award.  As this award was received 11 months before the cross-petition to vacate was filed, any request to vacate this award is time barred.

Respondent claims that the Construction Water Award was not "final" until June 7, 2012, and therefore alleges that the request to vacate is timely.  (*See* Resp.'s Reply Mem. of Law in Supp. of Mot. for Summ. J. at 1, Doc. No. 20-8.)  The FAA only allows confirmation or vacatur of an award that is "final." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("Under the Federal Arbitration Act . . . a district court does not have the power to review an interlocutory ruling by an arbitration panel.").  An award is "final if it resolve[s] all issues

7

submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties . . . ." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998) (alterations in original, citations and quotations omitted).

"An exception to this principle of 'finality,' however, maintains that a partial award is final (and thus ripe for a petition to confirm [or vacate]) if it finally disposes of a separate, independent claim." *Emps. Surplus Lines Ins. Co. v. Global Reins. Corp.-U.S. Branch*, 2008 WL 337317, at *6 (S.D.N.Y. Feb. 6, 2008). "This holds true even where the parties have not asked the arbitrator to decide a claim separately." *Id.*

The Construction Water Award was rendered in an arbitration proceeding that consolidated several grievances. (Barker Decl. Ex. C, Decision and Award at 1.) The Executive Committee resolved the construction water allegations, but left open for further proceedings the allegations regarding fabrication of pipe and the operation of valves and pumps. In the introductory paragraphs titled, "PRELIMINARY MATTERS," the decision states: "The Arbitration procedures also state that '. . . [i]f the Arbitrators agree on a decision, that decision shall be final.' Lastly, if the Arbitrators cannot agree the matter is referred to a Full Committee hearing and, if necessary, to an outside arbitrator." (*Id.*) The decision then addresses each of the contracts in separate sections titled "I. The 47G Contract," "II. The 35G Contract," and "III. The 41G Contract." (*Id.* at 2-3.) The first two sections, Contracts 47G and 35G, were each referred to the Full Arbitration Committee because the Executive Committee could not come to an agreement on those grievances. (*Id.*) However, the Executive Committee issued a decision on the third contract, 41G Contract, the alleged construction water violation. (*Id.* at 3-6.) The committee ruled not only on liability, but also on actual and punitive damages. (*Id.* at 6 (holding

"we find that the Employer violated Paragraph 44 of the CBA by not paying for the maintenance of construction water for 1,023 hours" and "we therefore direct the Employer to pay $90,484.35 in damages and $10,000 as a penalty to the Plumbers Local Union No. 1 Welfare Fund").) Based on (i) the language in the introductory paragraphs; (ii) the structure of the decision; (iii) the severability of the issues; and (iv) the complete resolution of the construction water issue, the Court finds that the Construction Water Award was final with regards to the 41G Contract construction water issue as of the date of the decision, January 5, 2012.

Respondent admits receipt of the Construction Water Award on January 6, 2012. Therefore, the cross-petition to vacate the award, filed six months later, was not timely. While the Court finds that the request to vacate the Construction Water Award is time barred, the merits of that request are briefly addressed below, and is denied.

B.   *Alleged Grounds to Vacate Construction Water Award*

The Federal Arbitration Act sets forth specific grounds to vacate an arbitration award. 9 U.S.C. § 10. A district court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to post-pone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*

"Additionally, a petition to vacate an arbitration award can be based on two judicially created exceptions to confirmation: (1) that the award was made in 'manifest disregard' of the

9

law and (2) that the award violates public policy." *Huntington Hosp. v. Huntington Hosp. Nurses' Assoc.*, 302 F. Supp. 2d 34, 39 (E.D.N.Y. 2004) (citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2d Cir. 2000)). In this case, Respondent relies on the fourth statutory ground, claiming that the arbitrators exceeded their powers, and the manifest disregard exceptions. Therefore, only these exceptions will be addressed by the Court.

1. Whether Arbitrators Exceeded Their Powers

The Second Circuit has "consistently accorded the narrowest of readings to section 10(a)(4) permitting vacatur where the arbitrator has exceeded her powers." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quotation omitted). Thus, the focus of the inquiry into whether arbitrators exceeded their power is "'whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*.'" *Id.* (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)).

Notably, Respondent has not argued that the construction water issue was not properly before the Executive Committee. Instead, Respondent relies heavily on an argument raised during the arbitration, that it "had no authority, no obligation and no ability to police the site and to control or dictate the performance of work by other contractors . . . ." (Resp. Mem. of Law in Supp. of Mot. for Summ. J. at 9.) Respondent claims that there was no evidence or basis for the committee's findings; however, this claim is based on the merits of the award, not the scope of the decision. Additionally, Respondent cites provisions from paragraph 44 of the CBA, the same provision quoted and interpreted by the committee, and argues for an alternative interpretation of the agreement. (*Id.* at 11-13.) Respondent does not contend that the committee improperly considered paragraph 44, Respondent simply does not agree with the committee's interpretation

of the provision. Therefore, it is not proper for this Court to vacate the award based on section 10(a)(4).

2. <u>Whether Arbitrators Exhibited Manifest Disregard of Law</u>

Courts apply a three-step inquiry to determine whether an award may be vacated on the ground of manifest disregard of law. *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 408 (2d Cir. 2009). Courts look to whether "(1) the law that the arbitrators allegedly ignored was clear and 'explicitly applicable to the matter before [them];' (2) 'the law was in fact improperly applied, leading to an erroneous outcome;' and (3) the arbitrators knew of the law's existence and applicability, but intentionally disregarded it." *Agility Pub. Warehousing*, 840 F. Supp. 2d at 711 (alteration in original) (quoting *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)).

It is worth noting that Respondent only cites one legal principle throughout the entirety of its Memorandum of Law and Reply Memorandum of Law to support its allegation of manifest disregard of law – the remainder of the argument is a reiteration of factual arguments that were raised and addressed during the arbitration. According to Respondent, the arbitrators allegedly disregarded the principle that arbitrators cannot conduct independent investigations and rely on evidence not adduced at the hearing. (*See* Resp. Mem. of Law in Supp. of Mot. for Summ. J. at 14, Doc. No. 20-3.) Respondent claims that the decision was based on prior CBAs that were not addressed during the hearings and that "[t]he executive committee's 'independent' investigation and review of prior CBA's without presenting them to JPP [Plumbing] and affording JPP [Plumbing] the opportunity to respond was clearly improper and mandates that the arbitration award be vacated." (*Id.* at 15.)

11

However, Respondent fails to establish the necessary elements of a manifest disregard of law. Particularly, Respondent does not even allege that the arbitrators were aware of this rule that they supposedly ignored. Additionally, the Executive Committee's decision did not rely exclusively on the prior CBAs; rather, the committee relied on an interpretation of the particular CBA in question that gave meaning to all of the provisions in the agreement and the intent of the parties. Given that courts are reluctant to vacate an award based on manifest disregard of law and the rarity of such a decision, *see Telenor Mobile Commc'ns AS*, 584 F.3d at 407 ("It is, in a word, 'rare' to obtain relief from an arbitral award under this doctrine."), this Court finds that, even if the request had been timely, it is meritless.

## II. Confirmation of Awards

"Upon the denial of a motion for vacatur, the Court must confirm an arbitration award." *Am. Fin. Servs., Inc. v. Oxford Mgmt. Servs.*, 627 F. Supp. 2d 85, 102 (E.D.N.Y. 2008) (citing 9 U.S.C. § 9 ("[U]pon an application for an order to confirm an arbitration award, the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11.") and N.Y. C.P.L.R. 7511 ([U]pon the denial of a motion to vacate or modify, [the court] shall confirm the award.")). Therefore, the Train Drench Cover Award and Construction Water Award, with regards to the final decision on the construction water issue only, are confirmed and reduced to judgment.

## CONCLUSION

For the reasons set forth above, Petitioner's motion for summary judgment is granted and Respondent's cross-motion to vacate the awards is denied. The Clerk of the Court is directed to (i) enter judgment pursuant to the Trench Drain Cover Award in the amount of $12,236.00 against JPP Plumbing, (ii) enter judgment pursuant to the Construction Water Award in the amount of $90,484.35 in damages and $10,000.00 as a penalty against JPP Plumbing, and (iii) close this case.

SO ORDERED.

DATED:     Brooklyn, New York
           March 27, 2014

/s/
DORA L. IRIZARRY
United States District Judge